# *Ex parte* Mercantile Trust & Deposit Company.

## *Application for Mandamus.*

1. *Unauthorized withdrawal and mutilation of pleading by counsel.*— Where counsel applied to the chancellor for leave to file an original independent bill touching matters involved in a pending cause, in the same court, and the chancellor denied the application but indorsed on the bill leave to file it as a cross bill, in the pending cause, which was accordingly done, and counsel for cross-complainant afterwards, without leave, withdrew said cross-bill, erased the chancellor's order therefrom, and filed it as an original bill, it was proper for the chancellor to declare such conduct reprehensible and, of his own motion, to restore the bill to its original status under his previous order.

2. *Mandamus not proper remedy to determine whether bill should be filed as original or cross-bill.*—Where application is made to the chancellor to file a bill, touching matters involved in a pending suit, as an original bill, which is denied but leave is endorsed on the bill by the chancellor to file it as a cross-bill in the pending cause, which is done, mandamus will not lie to determine whether the bill should be filed as an original or cross-bill, since cross-complainant has the right to dismiss his cross-bill and file an original bill whose sufficiency could be determined by the chancery court and reviewed by appeal.

Application for writ of mandamus to the Hon. William H. Simpson, Chancellor of the Northern Chancery Division of Alabama.

The facts of the case are sufficiently stated in the opinion.

EMMET O'NEAL, PAUL HODGES and ALEX. T. LONDON, for the petitioner.

SIMPSON & JONES, for the respondent.

HEAD, J.—The question raised here is one of practice. Some time prior to the 8th day of April, 1895, Thomas A. Howell, individually, and as a director and stockholder of Florence Water Company, a body corporate, filed his bill against that company in the district court for Lauderdale and Colbert counties, in equity, in short, alleging the suspension of its corporate functions and business by said company, its want of a governing board, the duties it owed to the public and the state of its assets and liabilities; and praying that its plant, property and assets be placed in the hands of, and operated and cared for by, a receiver, under the orders of the court. Accordingly, the complainant himself, Howell, was appointed receiver, and, as such, he took charge of the property, &c., of the company. Upon the abolition of the said district court, by legislative enactment, this cause, with all others therein pending, in equity, was, by virtue of the provisions of the enactment, transferred to, and jurisdiction thereof vested in, the chancery court of the Northern Chancery Division of Alabama, and the same was therein pending, on the 8th day of April, 1895.

The Mercantile Trust and Deposit Company, of Balti-

more, was trustee for many persons holding bonds of the said Water Company, and, on the 8th day of April, 1895, it presented to the chancellor of said division a bill, in the form of an original bill, against said Water Company and said Howell, alleging, properly, its interest in the company as such trustee, and that the said suit of Howell, and his appointment as receiver, were begun, carried on and procured by fraud and collusion, in its proposed bill particularly described, and with the wicked intent therein described, and praying that said Howell's proceedings be enjoined and set aside as collusive and fraudulent; that a proper receiver be appointed by the chancellor to take charge of, and administer the affairs of the company, and that the mortgage or trust deed held by it, the said Trust Company, be foreclosed, &c.; and asked leave to file the same in the said chancery court. The chancellor declined to permit the proposed bill to be filed as an independent suit, but did permit it to be filed as a cross bill, or, as stated by the chancellor, as an original bill in the nature of a cross bill, in the said cause, already pending, of Howell against the Water Company, and he endorsed such leave upon the bill, signing his name thereto. The Trust Company availed itself of this permission, and the proposed bill was put upon the files of Howell's cause, as an original bill in the nature of a cross bill, and it thereby became a part of the record and files of that cause, and process was at once issued upon it by the register and duly served upon the persons made defendants therein. The counsel for the Trust Company also caused to be served upon the said defendants, Florence Water Co., and Thomas A. Howell, a notice signed by them as such counsel, giving notice that in the case of the *Mercantile Trust and Deposit Company, &c., v. Florence Water Company and Thomas A. Howell,* "filed as an original bill in the nature of a cross bill, in the case of *Thomas A. Howell v. The Florence Water Co.,*" they had moved the court for the appointment of a receiver and the granting of an injunction, in accordance with the prayer of the bill, and that they had set the motion down for hearing, at Chambers, at a particular time and place therein specified. The hearing of this motion was continued to April 27th. On that day, the parties appeared before the chancellor, and instead of presenting and insisting

on this motion, the counsel for the Trust Company presented a similar motion, but entitled as in an original cause of *Mercantile Trust and Deposit Company, of Baltimore, v. Florence Water Company and Thomas A. Howell.* It transpired that on the 12th day of April, 1895, one of the solicitors for the Trust Company had, without the leave or knowledge of the court or chancellor, taken the said cross bill (or original bill in the nature of a cross bill, as it was called) off the file of Howell's case against the Water Company and mutilated, in part, the record evidence by which it became a part of the record and files of that cause, by erasing therefrom the endorsement the chancellor had made permitting it to be filed as an original bill in the nature of a cross bill, as aforesaid; and had procured the register to issue new process upon the bill, as an original suit, independent of the suit of *Howell v. The Water Company.* When the matter of the motion came up before the chancellor, and the course the counsel for the Trust Company had pursued was developed before him, he wrote an order in which, after reciting the facts, he used this language: "While this conduct was unusual and reprehensible, it appears from the statements of solicitors that it was upon the idea that the complainants had a legal right to file the bill without leave of the court first obtained, and they are therefore acquitted of any intentional disrespect for the order of the court. But in view of these facts, and of the law as applicable in such cases, the chancellor now, of his own motion, orders and decrees that this bill, as an independent bill, be and the same is hereby stricken from the files of the court. The bill will, however, be entertained; and jurisdiction of the matters and things therein contained will be taken on it, as an original bill in the nature of a cross bill, as first filed." The Trust Company now seeks, by the writ of mandamus, to be issued from this court, to have the chancellor vacate that order.

We will not detract from the conservative and charitable view which the chancellor took of the extraordinary and remarkable course the solicitor for the Trust Company had pursued. The solicitor entertained a most serious misconception of his rights and authority in the premises, and the least the chancellor, intending

[*Ex parte* Mercantile Trust & Deposit Company.]

to uphold the proper order and dignity of his court, ought to have done, when the facts were disclosed to him, was to make the order he did make. The bill had been regularly filed, as a cross bill, in the Howell case. It thereby, with the endorsement of the chancellor thereon, became as much a part of the official record and file of that cause as any other paper in the cause. Counsel had no more right to take it off the file and mutilate it, as was done, than they had so to treat Howell's original bill itself, or any other paper in the cause. To sanction such a practice would lead to the most alarming abuses.

Much of the argument of counsel, in this proceeding, is devoted to the question of the proper method of procedure on the part of the Trust Company, in the assertion of the rights it seeks to assert against Howell and the Water Company, as set forth in the bill which it now seeks to have reinstated as an original, independent suit; the chancellor being of the opinion that a cross-bill in the pending suit of Howell is the proper course, while the counsel for the Trust Company contend that an original, independent bill is their proper remedy. We do not enter, on petition for *mandamus* like this, upon consideration of those questions. Here the inquiry is, what right had counsel for the Trust Company to go into the office of the keeper of the records of the chancery court and take from the files there kept, and mutilate the official and recorded fiat of the chancellor thereon, an official document belonging to a cause there pending, and be permitted to use that document for other and different purposes, in another and different proceeding? Insisting upon filing an independent bill, without leave of the court, as their lawful right and proper remedy, they should have done so, at least, unless they had first obtained leave of the court to withdraw the bill in question from the files of the court, to be used for the purposes of an original suit; and we do not hesitate to affirm that to grant such leave, if allowable at all, would be to sanction bad practice by the court. The records and files of causes should be kept intact. They should not be taken away for the purpose of being made a part of some other cause. If counsel were convinced that a cross bill was not the proper method of asserting their rights, but that they should proceed by original bill, it was open to them to dismiss the cross bill they had filed,

and, as we have already said, institute their original suit in the usual and proper way. Whether the latter mode of proceeding be the appropriate one to obtain the desired relief or not, could then legitimately come before the chancery court for decision, and before the court in a proper manner. That the chancellor did as he ought to have done in making the order objected to, we entertain not the slightest doubt, and the application for *mandamus* is denied.

*Mandamus* denied.